IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                           No. CR 11-2285 JB

DANIEL CANO-ROBLES,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Daniel Cano-Robles's Objections to the Pre-Sentence Investigation Report and Sentencing Memorandum, filed November 2, 2011 (Doc. 24)("Objections"). The Court held a sentencing hearing on December 9, 2011. The primary issues are: (i) whether the Court should find that Defendant Daniel Cano-Robles' 1992 burglary-conviction was a crime of violence; (ii) whether the Court should depart downward pursuant to U.S.S.G. § 5H1.6, based on family ties and responsibilities; and (iii) whether the Court should vary pursuant to 18 U.S.C. § 3553(a). For the reasons stated on the record and set forth below, the Court will overrule the Objections, but will grant the request for a variance. The Court will sentence Cano-Robles to 30-months imprisonment.

**FACTUAL BACKGROUND**

On October 23, 1992, Cano-Robles was convicted of Attempted Burglary of a Habitation, in the 210th Judicial District, El Paso, Texas in case number 66775. See Presentence Investigation Report ¶ 12, at 4 (disclosed October 19, 2011)("PSR"). The Judgment in that case reveals that Cano-Robles pled guilty to the indictment -- a violation of Texas Penal Code 30.02. See PSR ¶ 12, at 5. The indictment to which he pled guilty charged that Cano-Robles "did . . . intentionally and

knowingly, and with the intent to commit theft, attempt to enter a habitation without the effective consent of Jose Calderon, the owner." PSR ¶ 12, at 5. He was subsequently deported to Mexico on December 24, 1996. See PSR ¶ 12, at 4.

On May 10, 2011, a United States Border Patrol agent observed an individual, later identified as Cano-Robles, walking north -- away from the United States/Mexico border. See PSR ¶ 4, at 3. The officer encountered Cano-Robles in Sunland Park, New Mexico, where he was hiding in some bushes. See PSR ¶ 4, at 3. When confronted, Cano-Robles informed the officer that he was a citizen of Mexico and that he did not possess any valid immigration documents. See PSR ¶ 4, at 3. Cano-Robles asserted that he did not mean to enter the United States. See PSR ¶ 4, at 3.

## PROCEDURAL BACKGROUND

On September 16, 2011, Cano-Robles pled guilty to the Indictment, filed August 23, 2011 (Doc. 14), charging a violation of 8 U.S.C. § 1326(a) and (b), that being Re-Entry of a Removed Alien. See Non-Standard Fast Track Plea Agreement ¶ 3, at 2, filed September 16, 2011 (Doc. 21)("Plea Agreement"). Cano-Robles waived his right to appeal his conviction and any sentence within the advisory guideline range. See Plea Agreement ¶ 12, at 5-6. Plaintiff United States of America agreed that Cano-Robles is entitled to a reduction of 1 offense level pursuant to U.S.S.G. § 5K3.1 for his waiver of his appellate rights. See Plea Agreement ¶ 6(b), at 2.

On October 19, 2011, the United States Probation Office ("USPO") disclosed the PSR on Cano-Robles. The USPO calculates that Cano-Robles has a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a). See PSR ¶ 11, at 4. The USPO applies a 16-level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), based on Cano-Robles' 1992 burglary conviction being a crime of violence. See PSR ¶ 12, at 4-5. It also applies a 3-level reduction, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. See PSR ¶ 17, at 6. The PSR applies a further 1-level reduction

pursuant to the Plea Agreement.  See PSR ¶ 19, at 6.  Accordingly, the USPO calculates that Cano-Robles' total offense level is 20.  See PSR ¶ 19, at 6.  The USPO also calculates that Cano-Robles has a criminal history category of III, based on 4 criminal history points.  See PSR ¶ 23, at 8.  A total offense level of 20 and a criminal history category of III establishes a guideline imprisonment range of 63 to 78 months.  See PSR ¶ 45, at 12.

Cano-Robles objects to the PSR's application of a 16-level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(A)(ii), for being a person previously deported after a conviction for a crime of violence.  See Objections at 3.  He argues that his guilty plea was for a violation of Texas Penal Code § 30.02 and that the United States Court of Appeals for the Fifth Circuit has found that burglary of a habitation is not a crime of violence.  See Objections at 4 (citing United States v. Fuller, 453 F.3d 274, 278 (5th Cir. 2006); United States v. Silva, 957 F.2d 157, 162 (5th Cir. 1992)).  He asserts that, under Taylor v. United States, 495 U.S. 575 (1990), a person charged with unlawfully entering a habitation without consent must have an intent to commit a crime.  See Objections at 4.  Cano-Robles contends that he only turned the front door-knob of a home and, when the owner made her presence known, ran to hide in an neighboring garage.  See Objections at 4-5.  He argues that the Court cannot infer what he intended to do once he opened the door and that, as a result, he did not possess the requisite intent to commit a burglary.  See Objections at 5.  Cano-Robles asserts that his guilty plea does not specify to which subsection of Texas Penal Code § 30.02 he pled guilty.  See Objections at 5 (citing United States v. Beltran-Ramirez, 266 F.App'x 371 (5th Cir. 2008)(unpublished)).  Cano-Robles asks that the Court depart downward, pursuant to U.S.S.G. § 5H1.6, based on his family ties and responsibilities.  See Objections at 9.  He argues that he financially supports his wife, child, and his parents.  See Objections at 9.  He asserts that, while in Mexico, he frequently worked in factories as a security guard and as a manual laborer.

See Objections at 9.  Cano-Robles contends that, when he was arrested, his wife was forced to move back in with her parents and that his parents lost their healthcare.  See Objections at 10.  Although Cano-Robles recognizes that other members of his family could assist in supporting his family, he argues that he was their primary financial support and that, if he serves a substantial period of incarceration, it would be devastating to his family.  See Objections at 10.  With respect to the 18 U.S.C. § 3553(a) factors, Cano-Robles asserts that the only reason he received criminal history points for his burglary offense was his 1993 probation violation.  See Objections at 8.  He contends that, at all times relevant to this offense, he was compliant and cooperative, and notes that this was a non-violent offense.  See Objections at 8.  He also argues that his prior burglary conviction was non-violent.  See Objections at 8.  He requests a specific sentence of 15-months imprisonment or less.  See Objections at 11.

On November 8, 2011, the United States filed the United States' Response to Defendant's Objections to the Presentence Investigation Report and Sentencing Memorandum.  See Doc. 25 ("Response"). The United States asserts that the Texas crime of burglary is not categorically a crime of violence, but that, under the modified-categorical approach, Cano-Robles' conviction for attempted burglary qualifies as a crime of violence.  See Response at 2.  The United States points out that U.S.S.G. § 2L1.2 lists "burglary of a dwelling" as a crime of violence.  Response at 3.  It argues that Cano-Robles' offense meets the generic definition of a burglary required for U.S.S.G. § 2L1.2.  See Response at 3.  It contends that the Fifth Circuit has repeatedly held that a violation of Texas Penal Code § 30.02(a)(1) qualifies as a crime of violence for purposes of U.S.S.G. § 2L1.2, because it involves intent to commit a theft.  See Response at 4 (citing United States v. Garcia-Mendez, 420 F.3d 454, 456-57 (5th Cir. 2005)).  The United States represents that, when a court determines whether a prior conviction was for a crime of violence, the court should look to the

indictment, information, jury instructions, plea colloquy, and written plea agreement. See Response at 5 (citing Shepard v. United States, 544 U.S. 13, 17 (2005); Taylor v. United States, 495 U.S. at 602). The United States argues that the charging documents to which Cano-Robles pled guilty establish that he "unlawfully, intentionally and knowingly" entered a habitation without consent, and "did then and there commit and attempt to commit theft." Response at 6 (citing Indictment at 1-2 (dated July 1992), filed November 8, 2011 (Doc. 25-1)("Texas Indictment")). The United States asserts that the language of the charging documents makes clear that Cano-Robles was convicted of a crime of violence. See Response at 6. With respect to a downward departure pursuant to U.S.S.G. § 5H1.6, the United States contends that Cano-Robles' circumstances are not unique and that the guideline imprisonment range is reasonable. See Response at 7. With respect to the request for a variance, the United States argues that nothing about the offense or Cano-Robles is so extraordinary as to warrant a variance. See Response at 8.

The Court held a sentencing hearing on December 9, 2011. Consistent with his Objections, Cano-Robles argued that his burglary conviction should not be considered a crime of violence, because: (i) the Fifth Circuit does not consider a violation of Texas Penal Code § 30.02 a crime of violence; and (ii) his guilty plea did not specify to which subsection he was pleading guilty. See Transcript of Hearing at 3:18-4:5 (December 9, 2011)(Kennedy)("Tr.").[1] The United States argued that the cases to which Cano-Robles cites do not say what he purports they hold and that Cano-Robles pled guilty to an offense under Texas Penal Code § 30.02(a)(1), which the Fifth Circuit has recognized is a crime of violence. See Tr. at 5:3-6:10 (Wang). Cano-Robles responded that he and the United States read the cases differently and that, if the Court looked to the underlying facts

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

of his previous conviction, the Court would see that he did not plead guilty to a specific subsection. See Tr. at 6:20-7:9 (Kennedy).  The Court then overruled the objection.  See Tr. at 7:11-9:14 (Court).  The United States then moved, in accordance with the Plea Agreement, for a 1-level downward departure in offense level and for a third-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  See Tr. at 9:20-10:7 (Court, Wang, Kennedy).

Cano-Robles then argued that the Court should downwardly depart and downwardly vary. See Tr. at 11:1-13 (Court, Kennedy).  He asserted that, under U.S.S.G. § 5H1.6, the Court should depart based on his family ties and responsibilities, because he financially supports his wife, child, and parents.  See Tr. at 11:8-14 (Kennedy).  To support a variance, Cano-Robles also emphasized his family ties and reiterates that his crime was a non-violent offense.  See Tr. at 11:14-17 (Kennedy).  The United States argued that there was nothing extraordinary about Cano-Robles' circumstances and that the guideline range set forth an appropriate sentence.  See Tr. at 12:16-13:4 (Wang).

### RELEVANT LAW REGARDING 16-LEVEL ENHANCEMENT FOR A CRIME OF VIOLENCE

A 16-level enhancement applies where an illegal re-entry defendant was previously convicted for a felony crime of violence. Section 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines provides for a 16-level increase in the offense level "[i]f the defendant previously was deported . . . after (A) a conviction for a felony that is . . . (ii) a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The commentary to U.S.S.G. § 2L1.2 states:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state,

> or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii).

The Supreme Court of the United States has addressed how courts should determine whether a felony conviction is a crime of violence. In Taylor v. United States, the Supreme Court addressed "the meaning of the word 'burglary' as it is used in § 1402 of Subtitle I (the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, 18 U.S.C. § 924(e)." 495 U.S. at 577. The Supreme Court stated that, when an enhancement provision does not specifically define the enumerated offense, courts should define the offense according to its "generic, contemporary meaning." Taylor v. United States, 495 U.S. at 598. The Supreme Court found that the "generic contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. at 598. The Supreme Court concluded that "a person has been convicted [of the enumerated crime] if he is convicted of any crime, regardless of its exact definition or label, having the basic elements" of the generic, contemporary meaning of the enumerated offense. Taylor v. United States, 495 U.S. at 598. The Supreme Court then addressed "the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of 'burglary,'" because the state statute defines burglary more broadly than the generic definition. Taylor v. United States, 495 U.S. at 598. The Supreme Court stated that, in these cases, courts should use the categorical approach, "generally requir[ing] the trial court to look only to the fact of conviction and the statutory definition of the prior offense." Taylor v. United States, 495 U.S. at 601-02. Under Taylor v. United States, it therefore appears that, when addressing an enumerated offense, a court should define the offense

according to its generic, contemporary meaning and that, if a court cannot ascertain the generic contemporary meaning of the offense, the Court should follow the categorical approach in determining whether the offense is a crime of violence. See 495 U.S. at 598-602.

The Fifth Circuit has stated: "In determining whether an offense has as an element the use, attempted use, or threatened use of physical force against the person of another, [the] court uses the categorical approach set forth in Taylor v. United States." United States v. Mendoza-Sanchez, 456 F.3d 479, 482 (5th Cir. 2006). The Fifth Circuit, however, uses a "common sense approach," defining the offense according to its ordinary, contemporary and common meaning to determine whether an offense qualifies as one of the enumerated offense in § 2L1.2. United States v. Mendoza-Sanchez, 456 F.3d at 482. See United States v. Mungia-Portillo, 484 F.3d 813, 816 (5th Cir. 2007). In United States v. Hernandez-Galvan, No. 09-40872, 2011 WL 285222 (5th Cir. Jan. 31, 2011), the Fifth Circuit stated:

> To determine whether an offense falls within an enumerated category, this court employs a "common sense approach," based on the "generic, contemporary meaning" of the terms used in the Guidelines. As a guide to contemporary meaning, the court consults such sources as "the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries." . . . To determine whether an offense falls within the physical-force provision, the court employs a more "formalistic element-by-element approach." This analysis focuses on the "elements of the offense, rather than the facts underlying the conviction."

2011 WL 285222, at *2 (citations omitted).

The United States Court of Appeals for the Ninth Circuit has discussed the Fifth Circuit's use of the "common sense approach" to determine whether a prior offense constitutes a crime of violence under U.S.S.G. § 2L1.2 when the prior offense is an enumerated offense in the application notes. United States v. Esparza-Herrera, 557 F.3d 1019, 1023 (9th Cir. 2009).

> Were we to follow this approach, we would determine whether A.R.S. § 13-1204(A)(11) "is equivalent to the enumerated offense of aggravated assault as

-8-

that term is understood in its ordinary, contemporary, and common meaning."

> We do not use the common sense approach. Instead, we must apply the categorical approach "even when the object offense is enumerated as a per se crime of violence under the Guidelines." In applying the categorical approach to a "traditional crime" such as aggravated assault, "we derive [the crime's] uniform meaning from the generic, contemporary meaning employed by most states, guided by scholarly commentary." The Model Penal Code "serve[s] as an aid" in determining an offense's generic meaning. We derive the meaning of an enumerated Guidelines crime not from the offense's ordinary meaning but rather by surveying the Model Penal Code and state statutes to determine how they define the offense. Thus even if A.R.S. § 13-1204(A)(11) is equivalent to aggravated assault "as we generally understand that term," we must conclude that Esparza-Herrera's prior conviction was not for generic aggravated assault if together the Model Penal Code and most states define aggravated assault more narrowly than does the Arizona statute.

557 F.3d at 1023 (citations omitted). The United States Court of Appeals for the Eleventh Circuit has made a similar statement in United States v. Palomino Garcia, 606 F.3d 1317 (11th Cir. 2010).

> Taylor instructs us to determine whether the Arizona aggravated assault statute under which [the defendant] was convicted is equivalent to the generic crime of "aggravated assault" so as to qualify as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). To accomplish this task, we must derive the elements of a generic offense of aggravated assault by considering the elements of the crime that are common to most states' definitions of that crime, as well as learned treatises, and the Model Penal Code.

606 F.3d at 1331.

The United States Court of Appeals for the Tenth Circuit, in addressing whether a defendant's conviction for robbery constituted a crime of violence, stated:

> To determine whether a particular state's criminal statute falls within the ambit of the term "crime of violence" under the Guidelines, we look not to how a state has labeled its statute, but rather consider whether the statute corresponds with the "uniform generic definition" of the crime, using the analytical framework set out in Taylor v. United States, 495 U.S. 575 . . . (1990). To do so, we examine whether the state's statute "roughly correspond[s] to the definitions of [the crime] in a majority of the States' criminal codes," id. at 589 . . . , as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code. See, e.g., United States v. Santiesteban-Hernandez, 469 F.3d 376, 379 (5th Cir. 2006).

United States v. Garcia-Caraveo, 586 F.3d 1230, 123 (10th Cir. 2009)(footnote omitted).  In both United States v. De La Cruz-Garcia, 590 F.3d 1082 (10th Cir. 2010), and United States v. Romero-Hernandez, 505 F.2d 1082 (10th Cir. 2007), the Tenth Circuit addressed the enumerated crimes of "forcible sex offense" and "sexual abuse of a minor," and after discussing the categorical approach, it stated that, because the guidelines do not define the terms "forcible sex offense" and "sexual abuse of a minor," it looks to the ordinary, contemporary, and common meanings of the words used.  See United States v. De La Cruz-Garcia, 590 F.3d at 1160; United States v. Romero-Hernandez, 505 F.3d at 1087.

     Under the categorical approach, the court may look only to the statutory definition of the prior offenses and not to the particular facts of the defendant's underlying conduct.  See United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005).  In a "narrow range" of cases, the categorical approach permits the court to look beyond the statute of conviction and to apply a "modified categorical approach."  United States v. Torres-Romero, 537 F.3d 1155, 1158 (10th Cir. 2008).  When the underlying statute "reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy."  United States v. Torres-Romero, 537 F.3d at 1158 (quoting United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005)).  Under the modified categorical approach, the court "may examine judicial records in order to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face."  United States v. Torres-Romero, 537 F.3d at 1158 (quoting United States v. Zuniga-Soto, 527 F.3d 1110, 1121 (10th Cir. 2008)).  The Tenth Circuit has said that "the modified approach is properly used when the statute of conviction contains multiple element sets and is therefore divisible."

United States v. Herrera, 286 F. App'x 546, 552 (10th Cir. 2008)(unpublished)(citing United States v. Hays, 526 F.3d 674, 676 (10th Cir. 2008)).

## ANALYSIS

The Court will overrule the objection to the PSR with respect to U.S.S.G. § 2L1.1, because a violation of Texas Penal Code § 30.02(a)(1) is a crime of violence. The Court will also deny the request for a downward departure pursuant to U.S.S.G. § 5H1.6, because Cano-Robles circumstances do not fall outside the heartland of criminal offenders. The Court will vary downward to a sentence of 30-months imprisonment.

**I.   CANO-ROBLES' BURGLARY CONVICTION WAS FOR A CRIME OF VIOLENCE.**

Cano-Robles objects to the U.S.S.G. § 2L1.2 enhancement, because: (i) the Fifth Circuit has determined that a violation of Texas Penal Code § 30.02 is not a crime of violence; (ii) he never formed the requisite intent to commit burglary; and (iii) there was not a specific subsection applied to his conviction. See Objections at 3-5. The Fifth Circuit has held that a violation of Texas Penal Code § 30.02(a)(1) qualifies as a crime of violence. See United States v. Morales-Ordaz, 427 F.App'x 319, 320-21 (5th Cir. 2011)(unpublished)("It is unclear from the indictment whether Morales was convicted under Texas Penal Code § 30.02(a)(1), which does qualify as a crime of violence, or § 30.02(a)(3), which does not qualify as a crime of violence . . . .'"); United States v. Espinoza-Lazo, 400 F.App'x 926, 927 (5th Cir. 2010)(unpublished)("The indictment and judgment show that Espinoza-Lazo was convicted of burglary of a habitation with intent to commit theft, a violation of Texas Penal Code § 30.02(a)(1). We have previously held that such a conviction qualifies as a crime of violence for purposes of a § 2L1.2(b)(1)(A)(ii) enhancement."). Texas Penal Code § 30.02(a)(1) defines burglary as occurring when, without the effective consent of the owner,

a person "enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft or an assault." Tex. Penal Code § 30.02(a)(1). Texas' statutory definition of burglary substantially mirrors the "generic contemporary meaning of burglary" to which the Supreme Court referred in Taylor v. United States, which involves "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598. Accordingly, the Court agrees with the Fifth Circuit that a violation of Texas Penal Code § 30.02(a)(1) qualifies as a crime of violence.

Cano-Robles is correct that the Texas Indictment does not refer to the specific subsection to which he pled guilty. See Objections at 5. The Court must therefore apply the modified categorical approach to determine under which part of Texas Penal Code § 30.02(a) Cano-Robles was convicted. See United States v. Torres-Romero, 537 F.3d at 1158. Even under the modified categorical approach, however, a court will not engage in a subjective inquiry into the underlying facts of the conviction to determine whether the enhancement applies. See United States v. Dennis, 551 F.3d 986, 989 (10th Cir. 2008). Under Shepard v. United States, and Taylor v. United States, the Court may consider the charging document in determining whether a prior conviction constitutes a crime of violence. See Shepard v. United States, 544 U.S. at 20; Taylor v. United States, 495 U.S. at 602. Although those cases do not specifically recognize that a court may also consider the state court judgment, the Supreme Court has said that it did not "purport to limit adequate judicial record evidence strictly to charges and instructions." Shepard v. United States, 544 U.S. at 20. Other courts have held that the state court judgment is a permissible document under Shepard v. United States. See United States v. Young, 450 F.App'x 223, 224 (3d Cir 2011)(unpublished); Reina-Rodriguez v. United States, 655 F.3d 1182, 1191 (9th Cir. 2011); United States v. Garcia Arellano, 522 F.3d 477, 480-81 (5th Cir. 2008); United States v. Beasley, 442 F.3d 386, 393-94 (6th Cir.

2006). Accordingly, the Court looks to the Texas Indictment and the Judgment on Plea of Guilty Before Court Waiver of Jury Trial (dated October 23, 1992)("Texas Judgment") to determine whether Cano-Robles pled guilty to a violation of Texas Penal Code § 30.02(a)(1). With respect to the argument that Cano-Robles did not have the requisite intent, the Texas Indictment and the Texas Judgment indicate that Cano-Robles pled guilty to an offense under subsection (a)(1). The Texas Indictment charges that Cano-Robles "unlawfully, with the specific intent to commit the offense of burglary . . . intentionally and knowingly, and with the intent to commit theft, attempt to enter a habitation without effective consent," and "unlawfully, intentionally and knowingly and without effective consent . . . [did] enter a habitation . . . and did then and there commit and attempt to commit theft." Texas Indictment at 1-2. This language tracks the language of Texas Penal Code § 30.02(a)(1). The Texas Judgment indicates that Cano-Robles pled guilty to the Texas Indictment on October 23, 1992, and states that "the Defendant in Open Court, in person, pleaded guilty to the charge in the Indictment." Texas Judgment at 1. Because the Tenth Circuit has held that courts should not examine the underlying facts of a conviction, even under the modified-categorical approach, the Court cannot, and will not consider, Cano-Robles' argument that he only turned the front door-knob in deciding whether his conduct is a crime of violence. See United States v. Dennis, 551 F.3d at 989. That Cano-Robles pled guilty to the Texas Indictment, which tracks Texas Penal Code § 30.02(a)(1), is sufficient to justify a crime-of-violence enhancement under U.S.S.G. § 2L1.2. Accordingly, the Court will overrule the objection to the PSR's calculation of Cano-Robles' guideline imprisonment range.

**II.    THE COURT WILL NOT DEPART DOWNWARD PURSUANT TO U.S.S.G. § 5H1.6.**

Cano-Robles asks that the Court depart downward, pursuant to U.S.S.G. § 5H1.6, based on his family ties and responsibilities. See Objections at 9. He argues that he financially supports his

-13-

wife, child, and his parents. See Objections at 9. With respect to a downward departure pursuant to U.S.S.G. § 5H1.6, the United States contends that Cano-Robles' circumstances are not unique and that the guideline imprisonment range is reasonable. See Response at 7. The Court agrees that this case does not fall outside the heartland of cases. The United States Sentencing Commission has noted that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. In a prior case, the Court permitted a downward departure under this guideline where the defendant had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone. See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.). Additionally, the daughter's father was a severe alcoholic who was unable to care for children, and the defendant had no family members living in or near New Mexico. See United States v. Martinez, 2011 WL 6828055, at *5. Furthermore, the Court has denied departures under this guideline in cases with more compelling facts than this one. For example, in United States v. Ledezma-Ledezma, No. 10-1924, 2011 WL 3957553 (D.N.M. Sept. 2, 2011)(Browning, J.), the Court denied a downward departure under this guideline when the defendant argued he had traveled to the United States to protect his children, whom one of his stepchildren was allegedly sexually abusing. See 2011 WL 3957553, at *2-3. Family members often suffer from the choices defendants make, but the Court does not believe it is appropriate to depart on this basis. Moreover, it appears that Cano-Robles' wife and child have support from his wife's family, and that there are "other members of Mr. Cano-Robles' family who are employed and can assist to financially support their family." Objections at 10-11. Accordingly, this case remains within the heartland of cases and the Court will not depart downward on this basis.

### III. THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 30-MONTHS IMPRISONMENT.

The Court has reviewed the PSR's factual findings, and, there not being any objections to those findings, the Court adopts them as its own. The Court has also reviewed the PSR's guidelines calculation, and having overruled the objection to the 16-level enhancement, the Court adopts those calculations as its own as well. The Court has considered the factors set forth in 18 U.S.C. § 3553(a).

Before any downward departure, the offense level is 21 and the criminal history category is III, establishing a guideline imprisonment range of 46-57 months. Pursuant to rule 11(c)(1)(C) and U.S.S.G. § 5K3.1, the Court accepts the Plea Agreement, which stipulates to an offense level of 20, as the Court is satisfied that the agreed-on offense level reduction departs for justifiable reasons. The Plea Agreement is pursuant to a non-standard fast track plea agreement. In section 401(m)(2)(b) of the PROTECT Act, Congress approved early disposition or fast track programs if certain conditions are met. The Court believes that these conditions are met in this case and that this departure is in the lower part of the range of departures that Congress allowed. The Court accepts the Plea Agreement, and the Court's sentence will be consistent with it. An offense level of 20 and a criminal history category of III establishes a guideline imprisonment range of 41 to 51 months.

The Court notes that Cano-Robles illegally reentered the United States subsequent to a felony conviction for a crime of violence. The Court has, as the record will reflect, considered the guidelines, but in arriving at its sentence, has taken account not only of the guidelines, but of other sentencing goals. Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. After carefully considering Cano-Robles' circumstances, the Court concludes that the punishment set forth

in the guidelines is not appropriate for this offense. The Court then considered the kinds of sentences and ranges established in the guidelines and concludes that some variance is appropriate. While the Court recognizes that, under the guidelines, Cano-Robles' prior conviction qualifies as a crime of violence, when determining whether it should grant a variance, the Court is free to consider the underlying facts of that offense. Accordingly, the Court notes that his prior conviction did not involve violence. Because the United States Sentencing Commission and courts generally recognize that burglary of a dwelling is a crime of violence, the Court does not believe it is appropriate to vary much, but finds that some adjustment is necessary. The Court will adjust the sentence the equivalent of three offense levels. This variance recognizes that the conduct underlying Cano-Robles' burglary conviction was non-violent and that he has dependents who count on him for support, but still give some weight to the Sentencing Commission's determination that the crime of burglary of a dwelling should be treated more seriously. An offense level of 17 and a criminal history category of III establish a guideline imprisonment range of 30 to 37 months. The Court believes that a sentence of 30-months imprisonment is still high, but worries that anything less will begin to undercut Congress' and the Commission's intent and its determination that burglaries of a dwellings are serious offenses. The Court finds that a sentence of 30-months imprisonment reflects the seriousness of the offense, promotes respect for the law, provides a more just sentences, and provides adequate deterrence. The Court notes that Cano-Robles was young -- only seventeen years old -- when he committed the burglary offense and that this federal sentence is longer than the time he served in relation to that offense. Because this sentence is longer than any sentence Cano-Robles has previously served, the Court finds that it is sufficient to provide adequate specific and general deterrence. The Court believes that the seriousness of this sentence is sufficient to protect the public. While the Court is always concerned about introducing unwarranted sentencing

disparities when it varies, the Court believes that the size of the variance and the specific circumstances justifying the adjustment avoids creating unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Court finds that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable, more reasonable than the applicable guidelines sentence and reflects accurately the factors in 18 U.S.C. § 3553(a). Finally, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Cano-Robles to 30-months imprisonment.

**IT IS ORDERED** that Defendant Daniel Cano-Robles's Objections to the Pre-Sentence Investigation Report and Sentencing Memorandum, filed November 2, 2011 (Doc. 24), are overruled. The Court will grant in part and deny in part the request for a variance. The Court will sentence Defendant Daniel Cano-Robles to 30-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Holland S. Kastrin
Lynn Wei-Yu Wang
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Christin K. Kennedy
Albuquerque, New Mexico

    *Attorney for the Defendant*